UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

LEANDRA SCHNEIDER,   6:16-cv-2057-JR

                Plaintiff,

                                                                 FINDINGS &
           v.   RECOMMENDATION

JTM CAPITAL MANAGEMENT, LLC,

                Defendant.

RUSSO, Magistrate Judge:

    Plaintiff Leandra Schneider brings this action alleging defendant JTM Capital Management (JTM) violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, in its attempts to collect a debt from plaintiff.  Defendant moves for summary judgment.  The court held oral argument on March 7, 2018.  Defendant's motion should be granted and this case dismissed.

BACKGROUND

    Defendant is a passive debt buyer and does not engage in any direct collection activities concerning the accounts it owns.  Defendant invested in a debt portfolio which included plaintiff's

Page 1 - FINDINGS & RECOMMENDATION

account. Plaintiff alleges defendant is a debt collector who violated the FDCPA by:

>    [1].    Threatening to take an action or actions that cannot be legally taken or that Defendant did not intend to take, including falsely threatening legal action by and through Defendant's agent, Northeastern Asset Recovery Group, Inc....; [and]
>    [2].    [C]ommunicating with Plaintiff directly after learning that Plaintiff is being represented by counsel.[1]

Complaint (doc. 1) ¶¶ 9-10.

On August 16, 2017, the court set a discovery deadline of December 29, 2017, and a dispositive motion deadline of January 31, 2018. On December 22, 2017, defendant filed a motion for summary judgement. Defendant asserts it is not liable under the FDCPA because it does not meet the statutory definition of a debt collector. Specifically, defendant argues its principal business purpose is not the collection of debts and it does not regularly attempt to collect debts asserted to be owed or due another. See 15 U.S.C. § 1692a(6).

On December 14, 2017, plaintiff sought an extension of the discovery deadline and on December 26, 2017, the court extended the discovery deadline to January 31, 2018. On January 11, 2018, plaintiff responded substantively to the motion for summary judgment, but also requested additional time to supplement her response after completing discovery on the issue of defendant's principal business purpose. After defendant filed its motion for summary judgement, plaintiff issued a second set of written discovery requests.[2] Plaintiff requested defendant describe, among other things, the "principal purpose" of its business, and the process utilized to hire Northeastern Asset

---

[1]Plaintiff concedes, however, there was no direct contact between her and defendant JTM. See, e.g., Declaration of Brendan H. Little, Ex. A (Response to Defendant's First Interrogatories) (doc. 11-1) at Response 8 ("Plaintiff is aware of no direct Contact between JTM and Plaintiff.")

[2]The discovery requests included plaintiff's second request for admissions and first set of interrogatories. See Declaration of Josh Trigsted (doc. 20-1) at Ex. A.

Page 2 -FINDINGS & RECOMMENDATION

Recovery Group. The court, after a status conference, stayed briefing pending completion of discovery and allowed plaintiff to file an amended response by February 7, 2018.

On February 7, 2018, plaintiff filed a "supplemental brief" asserting defendant's answers were "evasive" with respect to any investigation by JTM whether "to hire the undercapitalized and extremely aggressive collector it eventually chose to collect the debt allegedly owed by Plaintiff." Supplemental Brief (doc. 19) at p. 1. Accordingly, plaintiff requests additional time to conduct a deposition.

For the reasons stated below, plaintiff's requested discovery would be futile and the motion for summary judgment should be granted.

## DISCUSSION

A.   Discovery

Under Fed. R. Civ. P. 56(d), plaintiff may seek additional discovery to obtain facts essential to justify an opposition to summary judgment. A party requesting a continuance pursuant to this rule must identify the specific facts that further discovery would reveal and explain why those facts would preclude summary judgment. California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998).

Plaintiff asserts:

> To the extent the Court is persuaded by arguments made in Plaintiff's Response to Defendant's Motion for Summary Judgment [Dkt. 14] that there should be some responsibility for debt purchasers for the conduct of their agents, at least those who intentionally choose collectors who are undercapitalized and/or who violate the FDCPA as a matter of policy, it would be appropriate to conduct further discovery, namely a deposition, to force Defendant to actually answer the question about why it chose to hire the company that it did to collect its debts.

Plaintiff's supplemental Brief (doc. 19) at pp. 1-2.

In determining whether to grant the request, the court considers whether plaintiff had

sufficient opportunity to conduct discovery, plaintiff's diligence, whether the information sought is speculative, and whether allowing the discovery would preclude summary judgment. See, e.g., Martinez v. Columbia Sportswear USA Corp., 553 F. App'x 760, 761 (9th Cir. 2014).

Although defendant did not describe the process it used to hire Northwestern Asset Recovery Group to collect the debt owed by plaintiff, plaintiff does not demonstrate why she waited until after a motion for summary judgment had been filed to conduct such discovery. Prior to summary judgment, plaintiff issued written discovery requests and conducted a Fed. R. Civ. P. 30(b)(6) deposition of JTM's corporate representative. The Complaint demonstrates plaintiff was aware of alleged illegal collection activities by Northeastern Asset recovery Group at the outset of the case. Plaintiff fails to demonstrate diligence in seeking this information when she had ample opportunity to do so prior to defendant filing its summary judgment motion, including an extension of discovery and an opportunity to file a supplemental response.

Plaintiff speculates about conspiracies between "anonymous criminals," "bottom feeder collectors," or "unregistered and underground firms" and passive debt purchasing companies like defendant, which would allow them to engage in "aggressive" and "violent" collection tactics with impunity. The leap from an underfunded third party debt collector who "falsely threatened legal action," to defendant organizing violent debt collection practices is too speculative to justify additional discovery. Moreover, as discussed below, unless defendant itself qualifies as a debt collector, it cannot be held liable under the FDCPA for failing to monitor the activities of those it enlists without direction to collect debts on its behalf. The FDCPA regulates collection activity and

provides strict liability for that activity through an action against the collector.[3]

B.   "Debt Collector"

Congress enacted the FDCPA, in part, to:

> eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.

15 U.S.C. § 1692(e).

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

Plaintiff concedes that as the owner of the debt, defendant does not qualify under the second prong of the definition: one who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." See Henson v. Santander Consumer USA Inc., 137 S.Ct. 1718 (2017) (Individuals and entities who regularly purchase debts originated by someone else and then seek to collect those debts for their own account are not "debt collectors" subject to the FDCPA). Therefore, the question is whether defendant's principal purpose is the collection of debts.

Defendant is a passive debt buyer and does not take any steps to collect on the debt it owns. During discovery, plaintiff conceded that the only evidence she had to demonstrate defendant is a debt collector is a letter from Northeastern Asset Recovery Group stating that defendant purchased the debt. See Defendant's Motion for Summary Judgment at Ex. B (doc. 11-1), at p. 2. In addition,

---

[3]The court does not suggest that sham delegation of collection activities or actual agent/principal relationships between debt buyers and collectors shields debt buyers from liability under the FDCPA. The FDCPA, however, does not require creditors to undertake an investigation of the true third party debt collectors they hire.

plaintiff asserted defendant is "vicariously liable" for any violations by Northeastern Asset Group. Id. at Ex A, p. 3. Plaintiff has not presented any evidence that defendant engaged in any direct collection activities either against plaintiff or any other debtor.

Plaintiff argues that assuming defendant's business consists solely of purchasing debts and hiring others to collect that debt, the principal way in which defendant's business makes a profit is the collection of debts. However, the idea of interpreting passive debt buying companies as "debt collectors" has been recently rejected in this district.

In McAdory v. M.N.S & Assocs., LLC, 2017 WL 5071263, (D. Or. Nov. 3, 2017), the plaintiff argued a passive debt buyer was vicariously liable for allegedly illegal debt collection activities taken by an entity it hired to collect the debt. The court disagreed finding that where the debt purchaser had no interaction with any consumer and merely contracted with a third party for collection of debt, it did not have as its principal business purpose the collection of any debts. Id. at *2-4.

Plaintiff argued if McAdory is followed, plaintiff cannot prevail. (Oral Argument, March 7, 2018). Plaintiff further argued that besides not being well reasoned, McAdory would return us to the dark days of unregulated debt collection with a race to the bottom by debt purchasers to hire corrupt debt collectors.[4] Courts have, in fact, concluded that buyers of defaulted debt who then farm out the collection of the debt may be considered "debt collectors."

For instance, in Pollice v National Tax Funding, LP, 225 F.3d 379, 404-05 (3d Cir. 2000), the Third Circuit determined an entity should bear the burden of monitoring the activities of those it

---

[4]Indeed, during oral argument, plaintiff asked the court to take judicial notice of various horrors that will befall debtors. Judicial notice of speculative outcomes is not appropriate.

Page 6 -FINDINGS & RECOMMENDATION

enlists to collect its debts if the entity itself meets the definition of a debt collector.  Moreover, the court concluded

> NTF is a "debt collector," ....  Courts have indicated that an assignee of an obligation is not a "debt collector" if the obligation is not in default at the time of the assignment; conversely, an assignee may be deemed a "debt collector" if the obligation is already in default when it is assigned. [footnote omitted] See Bailey v. Security Nat'l Servicing Corp., 154 F.3d 384, 387–88 (7th Cir. 1998); Whitaker v. Ameritech Corp., 129 F.3d 952, 958–59 (7th Cir. 1997); Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 106–07 (6th Cir. 1996); McKee § 3 ("[O]ne who acquires the debt after it is in default is deemed a debt collector, and is subject to the provisions of the Act. Conversely, the assignee of a debt who acquires it before default is considered the owner of the debt and may pursue collection without concern for the limitations of the FDCPA.").  Here, there is no dispute that the various claims assigned to NTF were in default prior to their assignment to NTF. Further, there is no question that the "principal purpose" of NTF's business is the "collection of any debts," namely, defaulted obligations which it purchases from municipalities.

Id. at 403–04.

This line of cases conflates the two prongs of the definition of "debt collector" in order to include passive debt buyers in a pre- Henson legal landscape.  As noted in McAdory:

> [M]any of these cases conflate the two definitions of debt collector to some degree, and do not expressly analyze the "principal purpose" definition at issue here. For example, in Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403-04 (3rd Cir. 2000), the court failed to distinguish between the two definitions and thus its analysis is not directly applicable here. See also Barbato v. Greystone Alliance LLC, No. 3:13-CV-2748, 2017 WL 1193731 at *10 (M.D. Penn. Mar. 30, 2017) (failing to distinguish between the two definitions and applying an exception inapplicable to the "principal purpose" definition), recon. denied, No. 3:13-2748, 2017 WL 4698079 (M.D. Penn. Oct. 19, 2017). Moreover, these cases rely on the debt collector exception in § 1692a(6)(F) for those who obtain a debt in default.[footnote omitted] But a close reading of the statute shows that this exception applies only to those who are debt collectors under the second "regularly collects" definition of debt collector, as the exception requires the collection of a debt owed or due another. Because that second definition is not at issue here, the exception is not relevant and the cases relying on it are inapplicable.

McAdory, 2017 WL 5071263 at *4.

Page 7 - FINDINGS & RECOMMENDATION

Some courts also utilize exclusions from the definition of creditor to lump debt purchasers into the "debt collector" category. See, e.g., Barbato v. Greystone Alliance, LLC, 2017 WL 5496047 at *6 (M.D. Pa. Nov. 16, 2017) (one cannot be a creditor and a debt collector as those terms are mutually exclusive, but an entity that acquires debt already in default is excluded from the definition of creditor). The McAdory court persuasively disposed of this argument as well:

> [S]ome courts have used the statutory definition of creditor as part of their analysis of whether someone is a "debt collector," noting that under the statutory scheme, "creditor" and "debt collector" are mutually exclusive. [footnote omitted] See, e.g., Plummer v. Atlantic Credit & Finance, Inc., 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014) ("For purposes of applying the [FDCPA] to a particular debt, these two categories—debt collectors and creditors—are mutually exclusive.") (citing Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003)); Polanco v. NCO Portfolio Mgmt., 132 F. Supp. 3d 567, 579 (S.D.N.Y. 2015) ("[T]he definition of 'debt collector' excludes 'creditors,' ...."). They reason that if the entity is not a creditor, it must be a debt collector. In determining that the entity is not a creditor, they rely on § 1692a(4) which provides that an entity is not a creditor when the entity receives a debt in default (1) by assignment or transfer and (2) for the purpose of facilitating collection of such debt for another. DNF acquired the debt for itself and thus did not obtain it to facilitate the collection of the debt for another. Therefore, this line of cases is unpersuasive as the statutory sections relied upon do not apply here.

McAdory, 2017 WL 5071263 at *4.

Here, even though defendant acquires debts already in default, there is no evidence to suggest it did so to facilitate the collection of the debt for another. As noted above, there is some support for the argument that an entity that primarily purchases defaulted debt as its business purpose is a "debt collector" because its purpose is to eventually collect on the debt, even if it hires a third party to do so. Nevertheless, the more persuasive line of cases specifically analyzes the principal purpose prong of the definition of "debt collector" and excludes such entities from the definition. See, e.g., Gold v. Midland Credit Mgmt., Inc., 82 F. Supp. 3d 1064, 1071 (N.D. Cal. 2015) (Plaintiff would have the court fill in the gap with an inference that because Midland Funding is in the business of acquiring

defaulted debts, it must therefore be in the business of collecting on those debts.); Kasalo v. Trident Asset Mgmt., LLC, 53 F. Supp. 3d 1072, 1079 (N.D. Ill. 2014) (Although OPS purchased Kasalo's debt when it was in default, OPS has not undertaken any collection activity, as required to fit the definition of "collector.").

Plaintiff seems to also advance a vicarious liability theory, but fails to develop it. For purposes of this theory, the court agrees that the entity alleged to be liable under the FDCPA need not itself meet the definition of a debt collector. See Huy Thanh Vo v. Nelson & Kennard, 931 F.Supp.2d 1080, 1088-90 (E.D. Cal. 2013) (holding non-debt collector responsible for its attorney's actions under the FDCPA). However, plaintiff merely states Northeastern Asset Recovery Group is defendant's agent. Plaintiff provides no evidence that defendant exercised control over Northeastern's conduct. See Clark v. Capital Credit & Collection Serv., 460 F.3d 1162, 1173 (9th Cir. 2006) (To be liable for the actions of another, the "principal" must exercise control over the conduct or activities of the "agent."); Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1516 (9th Cir. 1994) (Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken.). As noted above, plaintiff had ample opportunity to discover evidence in this area. Significantly, plaintiff's counsel declined to question defendant's representative regarding any control it might have exercised over Northeastern Asset Recovery Group during the Rule 30(b)(6) deposition.

The definition of "debt collector" does not include purely passive debt purchasing activity. As defense counsel noted at oral argument, "collect" is a verb that requires action. To the extent plaintiff is concerned about the increased abuse of debtors via fly-by-night third parties utilized by passive debt purchasers, that is an issue appropriate for Congress to resolve. Defendant's motion for summary judgment should be granted.

CONCLUSION

Defendant's motion for summary judgment (doc. 11) should be granted and this action should be dismissed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district Court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 22nd day of March 2018.

                                                  s/Jolie A. Russo
                                                  JOLIE A. RUSSO
                                                  United States Magistrate Judge